IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION


**In re**

**JAMES ANDREW BUSSMAN**

Debtor.

Civ. No. 6:23-cv-00555-AA

**OPINION AND ORDER**

_____

AIKEN, District Judge:

This case comes before the Court on appeal from orders of the United States Bankruptcy Court for the District of Oregon.  *See* ECF No. 1 (notice of appeal and statement of election to the District Court); *In Re Bussma*n, Case No. 6:21-bk-61160-tmr12.  For the reasons explained, the Bankruptcy Court Order of Dismissal, Bk. Dkt.[1] 251, is AFFIRMED.  The Order Closing the Case, 252, is AFFIRMED.  Debtor appeals the Bankruptcy Court's Order Denying Debtor's Motion for Rule 2004 Records Examination, Bk. Dkt. 221 and Order Denying Motion for Indicative Ruling, Bk. Dkt. 249. Appeal of those Orders is MOOT by disposition of this case.  Debtor's

---

[1]     For the sake of clarity, the Court will use "Bk. Dkt." to refer to docket entries in the underlying bankruptcy case and will retain the use of "ECF No." to refer to the docket entries in the district court case.

appeal of the Bankruptcy Court's Order Granting Relief From Stay, Bk. Dkt. 55, is DENIED as untimely and the Order is AFFIRMED.

## BACKGROUND

This case stems from a dispute between Debtor, James Bussmann and his cousins, Elizabeth Potter, Sara Strain, Jennifer Isenhart, and Mary Kistner ('the Sisters") over Debtor's alleged mismanagement of Bussman Cranberries, LLC, the family business. Debtor filed his petition for chapter 12 bankruptcy on July 6, 2021, on the eve of the state court trial in lawsuit filed by the Sisters against Debtor and Debort's brother.

The Sisters filed the state court action for breach of fiduciary duty, self-dealing and mismanagement. *See* Circuit Court of the State of Oregon for Coos County, case number 20CV22959. The the Sisters won a four-million-dollar judgment against Debtor. Later, the Bankruptcy Court granted Sisters' motion to dismiss the bankruptcy case because debtor did not have sufficient farm debt to qualify for relief under Chapter 12 of the Bankruptcy Code.

Now, Debtor appeals the order granting Sisters' motion to dismiss (Bk. Dkt. 251) and the order dismissing and administratively closing his case (Bk. Dkt. 252) (collectively, the "Dismissal Orders"). He also appeals three orders issued during the case: an order denying certain discovery (Bk. Dkt. 221; hereafter, the "Discovery Order"), an order declining to make "indicative rulings" on the discovery issues while he was appealing the Discovery Order (Bk. Dkt. 249; hereafter, the "Order Denying Indicative Rulings"), and the order granting the Sisters relief from stay to try their

claims against him in state court (Bk. Dkt. 55; hereafter, the "Order for Relief from Stay").

## ASSIGNMENTS OF ERROR

Debtor assigns as error the Bankruptcy Court's determination that: Debtor is a "family farmer." Debtor maintains that the court failed to apply the correct standard in determining whether debts were "farming operation debt." Debtor asserts that the court erred in finding JWB Livestock LLC was not a farming operation. Last, Debtor assigns error to the finding that debts owed to Luvaas Cobb, Diana Bussman, Northwest Farm Credit Services (stone age loan), and Flagstar Home Mortgage did not arise out of Debtor's farming operation.

## STANDARD OF REVIEW

A district court has jurisdiction to hear appeals from a bankruptcy court's final judgments, orders, and decrees. 28 U.S.C. § 158(a)(1). Whether a particular type of business is a "farming operation" is a question of interpretation of federal law, reviewed *de novo. See In re Quintana*, 915 F.2d 513, 515 (9th Cir. 1990) ("we review its conclusions of law *de novo.*"); *Saratoga Sav. & Loan Ass'n v. Federal Home Loan Bank Bd.,* 879 F.2d 689, 691 (9th Cir.1989). (The interpretation of a federal statute is a question of law reviewed *de novo.*). Courts review the bankruptcy court's findings of fact for clear error. *In re Fowler*, 903 F.2d 694, 696 (9th Cir. 1990); *See NetJets Aviation, Inc. V RS Air, LLC* (*In re RS Air, LLC*), 638 B.R. 403, 408 (B.A.P. 9th Cir. 2022). The Bankruptcy Court' determination that some of the Debtor's business

activities were not farming operations is a factual determination reviewed for clear error.).

## STATUTORY STANDARDS

Under 11 U.S.C. § 109(f)(3) "[o]nly a family farmer … may be a debtor under Chapter 12 …." 11 U.S.C. § 101(18)(A) defines "family farmer" in relevant part as an "individual … engaged in a farming operation … not less than 50 percent of whose aggregate noncontingent, liquidated debts (excluding a debt for the principal residence of such individual … unless such debt arises out of a farming operation), on the date the case is filed, arise out of a farming operation owned or operated by such individual…." This debt-percentage test is applied as of the petition date. *In re Osborne*, 323 B.R. 489 (Bankr. D. Or. 2005).

Under 11 U.S.C. § 101(21), a farming operation includes "farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state."

This list is not exclusive, and the definition of "farming operation" should be broadly construed. *See In re Sugar Pine Ranch*, 100 B.R. 28, 31 (Bankr. D. Or. 1989). The debtor has the burden to prove chapter 12 eligibility. *See In re Cooper*, No. 10-66447, 2011 WL 3882278, at *1 (Bankr. D. Or. Sept. 2, 2011) (citing *In re Powers*, No. 10-14557, 2011 WL 3663948, at *1 (Bankr. N.D. Cal. Aug. 12, 2011))

## DISCUSSION

I.    **Dismissal Orders**

Debtor asserts the Bankruptcy Court erred in dismissing his petition when it determined, in some cases, that Debtor was not a family farmer with respect to several of his operations. Here, the Bankruptcy Court had to differentiate between debts associated to "Bussman Cranberries"—an agreed farming operation—and other debts associated with JWB Livestock.

As seen in the definition above, a family farmer is one who is engaged in a farming operation. 11 U.S.C. § 109(f)(3). The Ninth Circuit has not described a test to determine a debtor's eligibility for chapter 12 relief under the requirements of § 109(f). In this District, however, a "totality of the circumstances" test has been applied in chapter 12 cases to determine whether a chapter 12 debtor is engaged in a "farming operation." *See Sugar Pine Ranch*, at 31; *In re Jones*, No. 10- 65478, 2011 WL 3320504, at *2 (Bankr. D. Or. Aug. 2, 2011); *Cooper*, at *1; *In re Mikkelsen Farms, Inc.*, 74 B.R. 280, 285 (Bankr. D. Or. 1987). In that analysis, the Oregon courts have considered the following factors:

1. Whether the location of the operation would be considered a traditional farm;

2. The nature of the enterprise at the location;

3. The type of product and its eventual market, although the court should not be limited to products and produce which are traditionally associated with farming in the state of the court's location. Debtors should not be denied the protection of the Bankruptcy Code merely because their endeavors are not found in the laundry list of Old McDonald's Farm;

4. The physical presence or absence of family members on the farm; 5. Ownership of traditional farm assets;

6. Whether the debtor is involved in the process of growing or developing crops or livestock; and

7. Whether the practice or operation is subject to the inherent risks of farming, this factor being a key factor.

*See Jones*, at *2-3 (citing Sugar Pine Ranch, at 31).

Here, the Bankruptcy Court analyzed those factors with respect to Debtors list of debts and operations.

### A.    Applying Totality of the Circumstances Test

Debtor takes issue with the court's application of the test and assigns error to such. However, Debtor fails to develop any argument about why this test was wrong or supply a different test the Bankruptcy Court should have used. Instead, Debtor argues that the test was "too restrictive." Opening Br. at 13. The Court finds no basis in law to determine that the Bankruptcy Court applied an incorrect standard. The above test is routinely applied in the Ninth Circuit in bankruptcy cases and has not been denounced by any legal authority the Court can find. Accordingly, this assignment of error is rejected.

At the hearing on the underlying Motion to Dismiss, the parties agreed debtor had the following noncontingent, liquidated farm and non-farm debts as of the petition date:

**Stipulated Farm Debts**
$13,067 John Deere Financial
$13,651 NW Farm Credit – "Water Loan"

**Stipulated Non-Farm Debts**
$47,591 Flagstar mortgage on North Bend residential rental
$13,591 Oregon Community Credit Union recreational trailer loan
$27,187 Rogue Credit Union – co-signed loan for stepson's car

**Disputed Farm Debts**
$436 Bank of America – JWB Livestock Visa bill
$30,807.40 NW CCU – Chevy Tahoe loan
$119,964 Luvaas Cobb legal fees
94,848 NW Farm Credit line of credit
$506,413 Diana Bussmann 2021 secured line of credit
$257,968 Flagstar home mortgage loan
$321,159 Stone Age loan
$313,534 Umpqua Bank – debtor's guaranty of loan to Bussmann
Cranberries

*See* Memorandum Decision on Motion to Dismiss; hereafter, "Dismissal Op," Bk. Dkt.

250 at 4.  The Court addresses the findings of the Bankruptcy Court for each disputed

debt.

### B.    *Whether JWB Livestock is a Farming Operation*

The Bankruptcy Court found that, to determine whether debts arise out of a

farming operation, it must analyze whether JWB Livestock, LLC, is a farming

operation.  The Sisters had argued that it was not, but instead, a cattle brokerage

which buys cattle at auction and immediately ships them directly to a buyer.

At the hearing, Debtor testified that it had not ran its own herd since 2017 and

had not brought any cattle to raise or feed.  The Bankruptcy Court found that based

on factors 6 and 7 from the above described "totality of the circumstances test" JWB

Livestock had not been a farming operation since 2017.  *See* Dismissal Op. at 5.

The Court finds that the Bankruptcy Court did not err in so determining.

Debtor testified that the nature of his operation had changed, noting that cattle were

purchased at auction and then shipped directly to a buyer.  As one Oregon bankruptcy

court succinctly stated: 'The mere purchase and sale of farm by-products is not

necessarily a 'farming operation.'" *Cooper*, at *2 (citing *Fed. Land Bank of Columbia v. McNeal* (*In re McNeal*), 848 F.2d 170, 172 (11th Cir. 1988)). I

### 1.    $436 Bank of America Visa Bill

The Bankruptcy Court found that Debtor testified that this credit card was used for business related to JWB Livestock, LLC, including expenses like vehicle maintenance for vehicles that he drove to the cattle auction.  Based on evidence that the credit card was used exclusively for the business of JWB Livestock, LLC, the court found that the debt represented by the Bank of America – JWB Livestock Visa Bill in the amount of $436.28 did not arise out of a farming operation and is not a farm debt.

On review of the record in this case, the transcripts, and exhibits, the Court finds that the Bankruptcy Court did not err in so finding, where Debtor stated he used it for expenses like vehicle maintenance for vehicles that he drove to the cattle auction

### 2    Tahoe Loan

Debtor testified that the Tahoe originally belonged to his former spouse, Wendy Bussmann, and was her daily driving car.  This background was corroborated by the testimony of Elizabeth Potter who stated that she knew the Tahoe was Wendy Bussmann's and saw Wendy Bussmann driving it prior to Debtor's ownership of the vehicle.  Debtor testified that when he was getting a divorce, he took out the loan in October 2018 to purchase the vehicle from his former spouse because she could no longer afford it.  He further testified that JWB Livestock, LLC, used the vehicle as part of its operation, noting that it was driven by his father, his cousins, or himself to

cattle auctions. The court found that the Tahoe loan is not a debt arising out of a farming operation. Dismissal Op. at 7.

The Court finds that the Bankruptcy Court did not err. The record presents evidence that JWB Livestock, LLC, ceased to be a farming operation in 2017 when it no longer raised its own herd of cattle. Debtor obtained the loan for the Tahoe in late October 2018, after the time JWB Livestock, LLC, could be considered a farming operation. Given Debtor's testimony that the primary use of the vehicle was for JWB Livestock, LLC, and the finding that the company had ceased to operate as a farm at the time the loan was obtained, the Bankruptcy Court's findings were not erroneous.

Thus, the Court rejects Debtor's assignment of error as to the JWB Livestock finding, and its associated debts.

### C.   *Whether Certain Debts Arose Out of Farming Operations*

Debtor argues that the Bankruptcy Court erred in finding that the debts associated with (1) Luvaas Cobb, (2) Northwest Farm Credit Services, (3) Flagstar Home Mortgage, and (4) Diana Bussman, did not arise out of Debtor's farming operation.

### 1.   *Luvaas Cobb Legal Fees*

The Luvaas Cobb legal fees in the amount of $119,964 are not disputed in amount. The Sisters had argued that the legal fees did not arise out of a farming operation, but "arose out of legal services rendered defending claims of fraud, breach of fiduciary and self-dealing in management of a limited liability company (Bussmann Cranberries, LLC) in which debtor was 1/7th owner." Bk. Dkt. 179 at 5. Debtor had

that the litigation was "directly related" to his personal farming operation and Bussmann Cranberries, LLC, which was also operated by Debtor. Bk. Dkt. 194 at 3.

The Bankruptcy Court found, and the parties did not dispute, that Cranberries, LLC, is a farming operation. See Dismissal Op. at 9. The Bankruptcy Court determined, however, that the legal fees Debtor paid to Luvaas Cobb was not a debt arising from farm operations. *Id*. at 10. The court found that the purpose of incurring the debt was not connected to the farming activity. To the contrary, the Sisters' legal claims against Debtor were related to alleged improper conduct on his part, and not related to activities connected with the farming operation. Those claims included breach of fiduciary duty, oppression, unjust enrichment, conversion, fraud, expulsion of a member, and other actions related to the individual acts of Debtor and not to any farming activity. See Dismissal Op. at 10 (so explaining).

The Court finds no error in the Bankruptcy Court's findings. As the Bankruptcy Court noted, courts around the country have stated that "[t]he criteria for determining whether debt arises out of a farming operation are: (1) the reason or purpose for which the debt was incurred, and (2) the use to which the borrowed funds were put." *In re Teolis*, 419 B.R. 151, 161 (*Bankr*. D.R.I. 2009). The Bankruptcy Court applied persuasive law and found facts supported by the record.

### 2.    *Northwest Farm Credit – "Stone Age Farm"*

Here the Bankruptcy Court found that the burden to prove eligibility is on the Debtor, and that Debtor failed to meet that burden. Dismissal Op. at 22. The Court discussed at length the information and how it was lacking, stating that what Debtor

had provided "makes it impossible for me to determine for what purpose the debt was incurred." Dismissal Op. at 23. Here, the Court agrees that the transaction history provided details about transactions after the filing of the bankruptcy, and those prior to the bankruptcy filing appear to either only be related to JWB Livestock, LLC, and transfers out to Debtor's checking accounts, but with no additional evidence or testimony provided to explain the transactions. The Court finds that based on the record and the legal standards noted above, the Bankruptcy Court did not err.

### 3.    *Flagstar Home Mortgage Loan*

The Flagstar Home Mortgage Loan amount of $257,968 is not disputed. Only the nature of the debt is in dispute. The debt calculations for § 101(18) exclude a debt for the debtor's principal residence of such individual unless the debt arises out of a farming operation. The Bankruptcy Court found that the Flagstar home mortgage loan did not arise out of a farming operation.

Testimony from Debtor during the hearing indicated that this loan was taken out to refinance the property and was later transferred from Umpqua Bank to Flagstar. Based on Debtor's testimony regarding the timing of the loans and the language of the Deed of Trust, the Bankruptcy Court determined that the loan proceeds were used specifically for Debtor's residence and do not satisfy the direct-use test. *Id*. at 27.

In *Woods*, the Tenth Circuit held that a debt for a personal residence arises out of a farming operation when it is "directly and substantially connected" to "any of the activities constituting a 'farming operation' within the meaning of" the statute. 743

F.3d 689, 705.  In determining whether there is a direct and substantial connection between the debt and the farming operation, the court applied a "direct-use" test that provides "if loan proceeds were used directly for or in a farming operation, the debt 'arises out of' that farming operation."  *Id*

The Bankruptcy Court applied the direct-use test and explained that the Flagstar loan, although a refinance of prior loans, appears to pertain only to the personal residence.  Dismissal Op. at 26.

The Court has reviewed the record, and also finds no evidence that the loan proceeds were used directly for or in a farming operation.    Further, Debtor's argument that the homestead property is an "integral part of the farm operation because the farm's books, and records are maintained in an office there and the farmhouse's proximity to the rest of the operation" allow Debtor to take care of his livestock cranberries, and bog systems is not persuasive. ECF No. 194, page 2. Debtor specifically testified that his bookkeeper, Diane Bussmann, kept the books for the LLCs, and no records were kept at his home.   Diane Bussmann's testimony was consistent.

### 4.   *Diana Bussmann Loan*

Debtor argued below that the loan from Diana Bussmann was used to pay off farming operation debt owed to Beef Steak Ranch. Bk. Dkt. 194 at 3.  The Bankruptcy Court discussed in minute detail the transaction history associated with the Diana Bussmann Loan.  Dismissal Op. at 24-26.

The Bankruptcy Court found that the Debtor had not met his burden in showing that the debt, represented by the Diana Bussmann line of credit, arose out of a farming operation. The court stated: "Exhibit 107 shows a check register for JWB Livestock, LLC, which shows a $700,000 deposit from Beef Steak Ranch, dated July 23, 2020. The payment amounts listed on the check register, all occurring after the check date, are related to JWB Livestock, LLC, and not JWB Cranberries, LLC, as they are for livestock yards and auctions." *Id.* at 26.

The Court finds that such a finding is clearly supported in the record and that the Bankruptcy Court did not err.

### D.    Whether JWB Livestock Was Farming Operation

Noted above, Section 101(18) states that a "family farmer" is an "individual…engaged in a farming operation…not less than 50 percent of whose aggregate noncontingent, liquidated debts (excluding a debt for the principal residence of such individual…unless such debt arises out of a farming operation), on the date the case is filed, arise out of a farming operation owned or operated by such individual…." Here, the Bankruptcy Court was then tasked with adding up what it had determined to be debts incurred by farming activities to determine whether they amounted to less than fifty percent. *Id.*

The Bankruptcy Court calculated the farm-debt test under § 101(18)(A). See Dismissal Op. at 28-31. The Court took the farm debts and divided them by the aggregate noncontingent liquidated debts to give the percentage of the debt arising out of Debtor's farming operations Here, that number was $661,411 divided by

$1,502,248. The debt for Debtor's Flagstar home mortgage loan was not included in the calculus, based on my finding that this debt did not arise out of a farming operation, and supporting case law that excludes such loans from the § 101(18)(A) calculation. Based on the court's calculations, 44.03% of Debtor's debt on the date the case was filed arises out of a farming operation owned or operated by Debtor.[2] Accordingly, the Bankruptcy Court found that the Debtor has not met the eligibility requirement for chapter 12 relief.

As a matter of law, the Court finds that the Bankruptcy Court did not err in its determination that Debtor is not a family farmer for purposes of Chapter 12. Its factual determinations are not clearly erroneous. On de novo review, the Court cannot find any error as a matter of law.

## II.    Denying Motion for Rule 2004 Examination; Denying Motion for Indicative Rulings

Debtor challenges earlier rulings of the Bankruptcy Court on discovery-related or discovery-adjacent issues. These issues are MOOT by the disposition of this case.

## III.    Order Granting Motion for Relief from Stay

Debtor argues that the Bankruptcy Court's Order Granting Relief From the Automatic Stay was incorrect. Opening Br. At 17. He argues that The Court applied the correct factors, but erred in its analysis: "The court placed too much weight on

---

[2] The Sisters point to a slight mathematical error that does not effect the legal outcome. Resp. Br. At 25.

the presence of non-core issues in the state court action, and not sufficient weight on the effect an adverse outcome would have on the assets of the estate and the other creditors, including the Debtor's complete loss of bargaining strength in the bankruptcy." *Id*.

Here, issue the Court today decides: Does a creditor's motion for relief from the automatic stay initiate a distinct proceeding terminating in a final, appealable order when the bankruptcy court rules dispositively on the motion?  In agreement with the courts below, our answer is "yes."  We hold that the adjudication of a motion for relief from the automatic stay forms a discrete procedural unit within the embracive bankruptcy case. That unit yields a final, appealable order when the bankruptcy court unreservedly grants or denies relief." *Id*. at 37-38.

The Bankruptcy Court's order granting relief from stay was entered on September 30, 2021.  In the order, the bankruptcy court modified the automatic stay "to allow the movants to prosecute their claims in the pending Coos County Circuit Court Case, No. 20CV22959, and to allow the case to proceed to trial and resolution including judgment, but not to enforce or collect any judgment without further order of this court."

In the Ninth Circuit case *In re Mayer*, 28 F.4th 67 (9th Cir. 2022), the court found that the denial of a motion for relief from stay "without prejudice" was a an unreserved ruling on a discrete issue because it indicated "that the court was willing to consider stay relief if sought for a different purpose but not for the purpose of resolving [a creditor's] state claims against [the debtor]."  *Id*. at 71-72.  Similarly, in

this case, the grant of relief from stay allowed the litigation of the state law claims against Debtor, which was a "discrete procedural unit within the embracive bankruptcy case." The bankruptcy court's ruling was a final, appealable order. Debtor therefore had until October 14, 2021 in which to appeal that decision. Debtor's attempt to challenge that order in the present appeal is untimely.

## CONCLUSION

For the reasons explained, the Bankruptcy Court Order of Dismissal, Bk. Dkt. 251, is AFFIRMED. The Order Closing the Case, 252, is AFFIRMED. The court's Order Denying Debtor's Motion for Rule 2004 Records Examination, Bk. Dkt. 221 is AFFIRMED. The court's Order Denying Motion for Indicative Ruling, Bk. Dkt. 249, is AFFIRMED. Debtor's appeal of the Bankruptcy Court's Order Granting Relief From Stay is DENIED as untimely and the Order, Bk. Dkt. 55, is AFFIRMED.

It is so ORDERED this   30th   day of    September    2024

_____/s/Ann Aiken_____
Ann Aiken
District Judge